J. H. QUEAL & COMPANY v. B. F. BULEN and Another.[1]

June 5, 1903.

Nos. 13,473—(73).

**Default Judgment—Trustees of School District.**

Where the board of trustees of a school district knowingly neglected to interpose a valid defense to a suit brought against it, allowing judg-

[1] Reported in 95 N. W. 310.

ment to go by default, *held*, upon a change in the board, the discretion of the court was properly exercised in opening the judgment, where the application therefor was made immediately after such change, and within the statutory period allowed therefor.

Action in the district court for Redwood county against defendants, as trustees of School District No. 104 of said county, to recover $1,497.39, and interest, for material furnished for the construction of a school building. Judgment by default was entered in favor of plaintiff for the sum demanded. From an order, Webber, J., vacating the judgment and permitting defendants to appear and defend the action, plaintiff appealed. Affirmed.

*Wilson Borst*, for appellant.

*Somerville & Olsen*, for respondents.

LOVELY, J.

Plaintiff obtained a default judgment against defendants for material furnished to construct a school house. An application was made to vacate the judgment upon the ground that it was obtained through fraud, and the neglect and misconduct of its board of trustees. The court granted the application. From this order plaintiff appeals.

It affirmatively appears from the affidavit of the moving party: That in June, 1901, the electors of the district voted to build a schoolhouse, and provided $4,000, to be realized upon its bonds, for the purchase of a site and in the construction of the building. That the trustees took charge of its erection, and paid out all the money raised for that purpose; then incurred the indebtedness for which the judgment was obtained in excess of the funds provided for and beyond the limit for which taxes could be assessed or levied. That a bill for such materials was twice presented by the plaintiff corporation at special meetings of the school district called for that purpose, and voted down, on which occasions the district refused to issue further bonds, or make any provision for the payment of plaintiff's claim, whereupon action was brought to recover the same. That the trustees declined to contest it, although requested to do so by various taxpayers. That such taxpayers consulted counsel, and were advised that they had no other

redress than to wait until the annual meeting of the school district, and secure a change in the trustees, when proceedings could be taken to open the judgment. That at the annual school meeting in July following there was an election of a new director in place of the retiring one, when these proceedings were immediately instituted, in which an answer setting forth the above facts and a valid defense was tendered, with the application to open the judgment, upon the grounds above stated. Objection is made to the allegations in this affidavit, which charges, among other things that through fraud and collusion there was an arrangement between plaintiff and the trustees to allow the judgment to be obtained without defense.

We have not thought it essential to review the allegations charging fraud, for, leaving them out of consideration, it sufficiently appears from the facts disclosed that there was a legal defense to plaintiff's claim under G. S. 1894, § 1639, which provides that:

"It shall be unlawful for the * * * authorities of any school district, unless specially and expressly authorized by law, to contract any debt or incur any pecuniary liability for the payment of either the principal or interest for which during the current year or any subsequent year it will be necessary to levy on the taxable property of such county, township, city, town, village or school district, a higher rate of tax than the maximum rate prescribed by this act; and every contract made in contravention of the provisions of this section shall be utterly null and void in regard to any obligation thereby imposed on the corporation on behalf of which such contract purports to be made."

It seems very clear that if the trustees of the district, with knowledge of the illegality of plaintiff's claim, allowed judgment to go against the district, the lapse of time during which their deliberate refusal to act in the matter, when it may have been their duty to do so, could not be charged against the district as an unreasonable delay if the application were made within the year provided for in G. S. 1894, § 5267, for the taxpayers of the district, who can only be represented by the trustees, could do nothing in the meantime but make protest, which it is stated they did, although without avail.

We have already held that, where a default judgment was secured through the neglect of a corporate officer, upon whom the summons was served, to take notice thereof, it was within the discretionary power of the court to relieve the defendant from the consequences thereof. Bray v. Church of St. Brandon, 39 Minn. 390, 40 N. W. 518.

Under the circumstances here set forth we cannot, upon equitable grounds, reach any other conclusion than that the delay of the district in this case was excusable, though the officers who were intrusted with the duty to protect its rights declined to act when they might have done so. We do not intend to pass upon the merits of the defense as presented by the counter affidavits, for this must be considered upon the trial, all that was required in this respect was a prima facie showing thereof to justify the action of the court. Lathrop v. O'Brien, 47 Minn. 428, 50 N. W. 530; McMurran v. Bourne, 81 Minn. 518, 84 N. W. 338.

Order appealed from affirmed.