JOHN BRANLEY v. BARNEY DAMBLY and Another.[1]

July 12, 1897.

Nos. 10,617—(216).

### Judicial Sale—Rights of Purchaser—Setting Aside Judgment.

The setting aside of a judgment, regular upon its face, had in a court of competent jurisdiction, and not affecting the title or estate in real estate, does not avoid a judicial sale of real estate, under an execution issued thereon, made to a stranger, who had purchased in good faith for a valuable consideration.

Appeal by plaintiff from an order of the district court for Stearns county, Searle, J., denying his motion for a new trial, after the court had ordered judgment for defendants. Affirmed.

*J. D. Sullivan,* for appellant.

*Calhoun & Bennett,* for respondents.

BUCK, J.

In the year 1884 one John Roller recovered a judgment in justice court against John H. Zins. A transcript was filed in the district court, an execution issued, and returned unsatisfied. Roller began an action in the district court against John H. Zins and Anna Maria Zins, his wife, to subject the real estate in controversy to the lien of this judgment. The summons was served on Anna Maria Zins personally August 25, 1890, and on John H. Zins the same day, by leaving the same at the house of his usual abode. The complaint is founded upon the theory that the property in fact belonged to the husband, John H. Zins, but that the record title was placed in the name of the wife to defraud the husband's creditors. In that action the court found the allegations of the complaint to be true; that John H. Zins was the owner of the property; that the judgment referred to should be declared and decreed a valid lien on his real estate; that an alias execution should issue, and the property be sold to satisfy the judgment. On February 6, 1891, judgment was entered declaring the above-mentioned judgment a lien on the property, and that an alias execution be issued, and the property

sold to satisfy the judgment. Execution was issued accordingly, and on May 15, 1891, the property was sold to George W. Vogel for a valuable consideration then paid by him, and on February 3, 1893, Vogel conveyed an undivided one-half of the land to one Peter Dambly, under whom the defendant Barney Dambly claims the right as tenant.

Nothing further was done in the matter until January 27, 1893, when Anna Maria Zins, upon certain affidavits, moved the court for an order setting aside the judgment against her, and giving her leave to answer, which motion was granted. Defendants answered, and a further motion by defendants for judgment upon the pleadings was granted, and based upon this a judgment was entered August 5, 1895. The plaintiff, Branley, claims, through various mesne conveyances, title to the premises, which would be good unless defeated by the title obtained by Vogel at the execution sale.

The present action is one of ejectment, and the trial court found that at the time of the commencement of this action the plaintiff was not the owner of the real estate described in the complaint herein, nor entitled to the possession thereof, but that the defendant Peter Dambly was the owner of an undivided one-half of said estate. The only point in issue therefore is whether or not the subsequent setting aside of the judgment against Zins and wife, and the judgment being rendered in their favor, invalidated the execution sale to Vogel.

It appears from the evidence that Peter Dambly was a purchaser in good faith, for a valuable consideration, without notice of any facts which would in any wise injuriously affect his title. Is such a purchase at a valid execution sale under a valid, not void, judgment avoided by a subsequent vacation of the judgment? The judgment entered in behalf of Roller and against the Zinses, February 6, 1891, was never recorded in the office of the register of deeds of the county where the land in controversy is situated. Appellant admits that, if this judgment had been so recorded for more than three years prior to the application to vacate the judgment, and Dambly held as the grantee of the purchaser, then unquestionably, under the proviso to G. S. 1894, § 5267, his rights would have matured, in the

absence of actual notice of defects in his title; but he contends that, although the judgment assumes to deprive Anna Maria Zins of title and pass it to John H. Zins, it comes within the category of judgments affecting the title to real estate which might have been recorded, and as it was not so recorded the purchaser at the execution sale cannot be protected as an innocent purchaser for value without notice.

We are of the opinion that the judgment referred to is not one where to effectuate the judgment and proceedings thereunder it should be recorded in the office of the register of deeds. In Drew v. City, 44 Minn. 501, 47 N. W. 158, the judgment in the prior action to determine adverse claims adjudged that the plaintiff Lord was the owner, and that the defendants had no interest in the property. There the judicial proceedings ended, and the city subsequently purchased from Lord. This was purely the conventional contract of the parties, and the city occupied precisely the same position as any purchaser pendente lite. In the present case the judgment set aside the fraudulent conveyance which constituted an apparent obstacle to the enforcement of Roller's judgment, and decreed that that judgment was a lien upon the property, and directed that execution thereon be issued, and the property sold to satisfy the judgment. The sale was, therefore, a judicial sale, and the purchaser is entitled to the same protection as the purchaser at any other judicial sale.

The court had jurisdiction over the parties and the subject-matter, and hence jurisdiction to render the judgment, and the rights of innocent third persons purchasing at the execution sale under such judgment, while it remained in force, must be sustained notwithstanding a subsequent reversal. In the case of Lord v. Hawkins, 39 Minn. 73, 38 N. W. 689, Chief Justice Gilfillan, referring to a question of this kind, in the course of his opinion (page 76) uses this language:

"The second question in the case is, does a purchaser in good faith from the successful party in a judgment determining the title to real estate come within the rule which protects a bona fide purchaser under a judicial sale—that is, a sale made pursuant to a judgment, or to enforce a judgment—from the effect of a subsequent reversal or vacation of the judgment? The reason for the rule is obvious,

and suggests the answer to the question. It is founded upon considerations of public policy which require that property shall not be sacrificed at sales that the law makes; that at such sales purchasers shall be encouraged to bid a fair price. And this cannot be effected if the title they acquire is subject to be defeated in consequence of errors or irregularities in the judgment under or pursuant to which the sale is made."

It is not clear upon what grounds the court vacated the judgment against the Zinses. No fraud or mistake appears to have entered into the case, and it was not set aside until more than two years after its rendition, and then not for want of jurisdiction in the court to render it. If the judgment had been one for the recovery of money only, no possible question could reasonably have arisen. Gowen v. Conlow, 51 Minn. 213, 53 N. W. 365.

And holding, as we do, that the statute in no way affects the vacation of the judgment, and it not being one directly affecting the title to real estate, or any interest therein, the order denying the motion for a new trial is affirmed.